**The below described is SIGNED.**

**Dated: June 26, 2009**

**JUDITH A. BOULDEN
U.S. Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br>**ROGER SCOTT BRYNER**,<br>　　　　　　Debtor. | Bankruptcy Number: **07-23795**<br>Chapter 13 |
| **ROGER BRYNER**,<br>　　　　　　Plaintiff,<br>v.<br>**EMILY SMOAK**,<br>　　　　　　Defendant. | Adversary Proceeding No. **08-2065**<br>Judge Judith A. Boulden |

**MEMORANDUM DECISION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY DISPOSITION**

Before the Court are two motions: Defendant Emily Smoak's (Defendant) Motion for Summary Judgment (Defendant's Motion); and Plaintiff Roger Bryner's (Debtor) Cross Motion for Partial Summary Disposition (Debtor's Motion). Both motions request that the Court determine whether certain acts or omissions by the Defendant constituted willful violations of the

automatic stay under 11 U.S.C § 362(k).[1] The parties were given an opportunity to fully brief the two motions and, at the end of the briefing schedule, the Court took the motions under advisement. The Court has considered the facts properly before it and has conducted an independent review of applicable law. Based on the foregoing, the Court makes the following ruling.

### I. JURISDICTION AND LEGAL STANDARD

This Court has jurisdiction under 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2), and the Court may enter a final order.[2]

Federal Rule of Bankruptcy Procedure 7056 makes summary judgment appropriate when, after consideration of the record, the Court determines that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3] In applying this standard, the Court examines the factual record in the light most favorable to the nonmoving party.[4] The party opposing summary judgment may not rely on mere allegations or denials in its pleadings or briefs, but must identify specific and material facts for trial and significant probative evidence supporting the alleged facts.[5] There is no genuine issue of fact "[w]here the record taken

---

[1] Future statutory references will be to title 11 of the United States Code unless indicated otherwise.

[2] The Debtor's main case was dismissed on March 19, 2008, but this Court retained jurisdiction over this adversary proceeding because allegations that the automatic stay has been violated are properly made before this Court.

[3] FED. R. CIV. P. 56(c).

[4] *See Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995).

[5] *Burnette v. Dresser Indus., Inc.*, 849 F.2d 1277, 1284 (10th Cir. 1988).

as a whole could not lead a rational trier of fact to find for the non-moving party."[6] The moving party has the burden of establishing that it is entitled to summary judgment.[7]

## II. UNDISPUTED FACTS

Although the parties disagree about the interpretation of the facts and the record before this Court, the parties agree that the state court record (upon which the allegations of a stay violation are based) "speaks for itself."[8] Accordingly, the Court makes the following findings of fact.

Before filing for chapter 13 relief on August 16, 2007, the Debtor was involved in civil/domestic litigation before the state court (State Court Action). The state court record reveals that the litigation was extremely combative and involved inappropriate behavior by both the Debtor and the respondent in the case. The Defendant (who is an attorney) represented the respondent during the portion of the litigation that is at issue here. The Guardian Ad Litem was also heavily involved in the State Court Action.

On April 20, 2006, Judge Lindberg, the judge assigned to the State Court Action, issued an Amended Order denying the Debtor's Petition for Stalking Injunction.[9] The Amended Order states:

> Both parties are clearly combative and highly inappropriate in their dealings with each other. However, the Court find's [sic] [the Debtor's] repeated *ad hominem* attacks towards the Court and counsel to be particularly offensive. . . . If [the Debtor] chooses to continue representing himself *pro se*, he will be held to the

---

[6] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[8] Debtor's Ver. Memo. in Supp. at ¶ 1.

[9] The civil case number assigned to this stalking petition was 060903365, but involved conduct relating to the civil case 044904183.

I:\LAW\OPINIONS\Opin0553.wpd  3

       Standards of Professionalism and Civility adopted by the courts generally, and this Court in particular.[10]

Some months later on or about December 4, 2006, Judge Lindberg issued a Minute Entry and Order expressing concern about, *inter alia,* the "tenor of [the Debtor's] alleged statements [and] . . . [i]n particular . . . the express and implied threats against the [Guardian Ad Litem] (and, arguably) against other women involved in the case -- including the Respondent, her attorney [the Defendant], and the Court."[11] Judge Lindberg noted that the "escalating hostility reflected in [the Debtor's] alleged statements may well rise to the level of contempt of Court on various alternative grounds"[12] under Utah Code Ann. § 78-32-1.[13] Judge Lindberg referred the contempt issue to the Judiciary's General Counsel and to the presiding judge of the state court to determine whether an order to show cause proceeding was warranted.

On January 10, 2007, the presiding judge[14] issued a Minute Entry indicating that she concurred with Judge Lindberg's assessment that an order to show cause was appropriate in the case. She directed the Guardian Ad Litem to prepare "the requisite motion, order to show cause, and affidavit."[15] The presiding judge then assigned Judge Barrett to adjudicate and resolve the

---

    [10]     Smoak's Affid., Exh. 1 at ¶5(A).

    [11]     *Id.*, Exh. 2 at ¶5.

    [12]     *Id.* at ¶6.

    [13]     This section of the Utah Code has since been repealed and renumbered. *See* UTAH CODE ANN. § 78B-6-301.

    [14]     This Court assumes Judge Peuler was the presiding judge at the time based on the fact that is was Judge Peuler who resolved Judge Lindberg's referral made in the December 4, 2006 Minute Entry and Order.

    [15]     Smoak's Affid., Exh. 3.

order to show cause. The Guardian Ad Litem complied with the January 10, 2007 Minute Entry, and the state court issued the Order to Show Cause on January 25, 2007 (January 25th Order to Show Cause). The hearing on the January 25th Order to Show Cause was held March 22, 2007.[16] At the March 22, 2007 hearing, the Defendant made the following statements:

> MS. SMOAK: Okay. We're asking for some kind of fine to be ordered for [the Debtor] to pay to my client for her attorney's fees. She's paid upwards of $150,000.00 from the beginning, but upwards of [$]50,000 from the time that we just settled this case. And as you can see, with 28 lawsuits . . .[17]
>
> . . . .
>
> And we're not specifically asking for attorney's fees, we are asking for a fine, to send him a message that when he files something frivolous, when he files a harassment, or harassing e-mail or pleading that there will be a reaction that's some kind of a penalty.[18]

At the conclusion of the hearing, Judge Barrett took the matter under advisement.

While the January 25th Order to Show Cause was under advisement, Judge Lindberg issued a Minute Entry on August 23, 2007 addressing a different order to show cause that was pending and set for evidentiary hearing on August 30, 2007.[19] Judge Lindberg noted that in preparing for the August 30, 2007 hearing on the order to show cause, she had discovered that the Debtor had filed a chapter 13 bankruptcy petition on August 16, 2007.

Shortly thereafter on September 13, 2007, Judge Barrett (who had taken the January 25th Order to Show Cause under advisement on March 22, 2007) issued a Notice of Order to Show

---

[16] The Order to Show Cause indicates that the hearing was to be held on February 12, 2007, but for reasons unknown to this Court, the hearing was not held until March 22, 2007.

[17] Debtor's Ver. Mem. in Supp., Exh. C at 45, lines 21-25.

[18] Def's Mem. in Opp., Exh. 1 at 143-144.

[19] This order to show cause involved allegations that the Debtor failed to abide by court orders requiring him to timely pay his share of a Dr. Wehl's fees and the Guardian Ad Litem's fees.

Cause (Notice) informing the parties that a hearing on the January 25th Order to Show Cause would be held September 25, 2007 at 8:00 a.m. The Notice did not disclose what would occur at the September 25, 2007 hearing, but it stated: "***ALL PARTIES REQUIRED TO BE PRESENT***."[20] The Notice was sent to the Defendant, the Debtor, and the Guardian Ad Litem. The Defendant appeared at the September 25, 2007 hearing. At the hearing, Judge Barrett indicated that he had entered Findings of Fact and Conclusions of Law and a Judgment on the record the day before finding the Debtor in contempt. In those documents, Judge Barrett specifically found beyond a reasonable doubt that the Debtor intentionally, knowingly, and willfully failed to comply with the April 20, 2006 Amended Order issued by Judge Lindberg and that through his acts or omissions, he was in contempt of the state court. At that point, the Debtor was taken into custody. The Defendant made two statements on the record at the September 25, 2007 hearing. First, she indicated to the state court, in response to the Debtor's concerns about his children, that "my client knows where the children are. She'll take care of them,"[21] and second, she entered an appearance at the conclusion of the hearing at the request of the state court.[22]

### III.  DISCUSSION

Neither party disputes the material facts stated above. Therefore, pursuant to Rule 7056 (and with cross-motions pending) it is up to this Court to determine which party is entitled to judgment as a matter of law. The Defendant advances three arguments in her favor that no stay violation occurred. First, she argues that the automatic stay is not applicable to the contempt

---

[20]   Smoak's Affid., Exh. 7.

[21]   *Id.*, Exh 9 at 4, lines 16-17.

[22]   *Id.* at 5, line 4.

proceeding. Second, she contends that the contempt proceeding falls within an exception to the automatic stay. And finally, the Defendant maintains that she did not act willfully. The Debtor argues that the contempt proceeding was initiated by the Defendant and the Guardian Ad Litem, that the contempt proceeding was an attempt by the Defendant to seek compensation for fees owed to both the Defendant and the Guardian Ad Litem, and that the Defendant's failure to withdraw the request for fees was a violation of the automatic stay.

The central issue before this Court is whether the Defendant's appearance at the September 25, 2007 contempt hearing, or her failure to affirmatively withdraw any request for fees made to the state court at the March 22, 2007 hearing, violated the automatic stay. Section 362(a)(1) operates as a stay of "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title . . . ." In resolving the issue, some courts focus upon the nature of the contempt proceeding by examining whether the contempt is civil or criminal. Those courts have found that criminal contempt proceedings are excepted from the automatic stay provisions of § 362(a)(1).[23] Other courts have looked beyond the labels given to the contempt proceeding itself by focusing instead upon whether the proceedings are aimed at punishing the debtor for flouting prior court orders, or whether the contempt proceedings are veiled attempts to

---

[23] Some courts have drawn an analogy between contempt proceedings and the § 362(b)(1) exception to the automatic stay which allows the continuation of criminal proceedings against a debtor. *See, e.g., Smith-St. John Mfg. Co., v. Price*, No. 88-2018, 1989 WL 7922, at *2 (D. Kan. Jan. 9, 1989) (indicating that "civil contempt proceedings are akin to criminal proceedings in that they seek to punish a party for certain behavior and deter others from like behavior") (not reported).

assist a creditor in collecting a debt or judgment.[24] If the proceeding is the former, courts often find that the contempt proceeding, if it is meant to uphold the dignity of the court, is not stayed.[25] The oft-cited language from *Buscher* reads as follows:

> It is within this court's inherent power to take whatever steps necessary to ensure those persons within its power comply with its orders. The court cannot conceive that Congress intended to strip the court of this power, and instead permit a party to blatantly violate direct orders of the court and then seek shelter from a bankruptcy judge. If this were so, the court's orders could be rendered almost meaningless. The court must retain the ability to compel compliance with its orders; a party seeking relief from his creditors is not free to run rampant in flagrant disregard of the powers of the court. A civil contempt judgment is one effective method of coercing compliance and of 'upholding the dignity of the court.'[26]

A review of the undisputed material facts in this case show that entering the September 24, 2007 findings of fact, conclusions of law, and judgment, and conducting the September 25, 2007 hearing, were actions taken by the state court to enforce its prior order and protect its dignity. The contempt proceeding arose from language included in Judge Lindberg's April 20, 2006 Amended Order instructing the Debtor to conduct himself in a civil manner and to stop all *ad hominem* attacks against not only the other parties in the case but also the state court. Apparently, the Debtor did not comply with the April 20, 2006 Amended Order, so Judge Lindberg issued the December 4, 2006 Minute Entry and Order referring the issue to the presiding judge who then determined an order to show cause was appropriate. The presiding judge then assigned Judge

---

[24] *Rook v. Rook (In re Rook)*, 102 B.R. 490, 494 (Bankr. E.D. Va. 1989) (contempt orders which were intended solely to vindicate the dignity of the court did not violate the automatic stay); *US Sprint Communications Co. v. Buscher*, 89 B.R. 154, 156 (D. Kan. 1988) (automatic stay did not prohibit sentencing of the debtor on a contempt citation).

[25] *Summit Fin. Res., L.P. v. Walthers Oil Co.,* No. 2:07-CV-949 TS, 2008 WL 183380, at *2 (D. Utah Jan. 18, 2008) (not reported); *Buscher*, 89 B.R. at 157; *Rook*, 102 B.R. at 494.

[26] *Buscher*, 89 B.R. at 156.

Barrett to resolve the contempt proceeding. It was only upon the state court's determination that an order to show cause was appropriate and pursuant to the state court's direction that the Guardian Ad Litem prepared and filed the necessary documents to begin the contempt proceeding against the Debtor.

A review of the state court's Findings of Fact and Conclusions of Law also support the conclusion that this was a proceeding instigated by the state court to uphold its dignity and to enforce the April 20, 2006 Amended Order. The Findings of Fact and Conclusions of Law include numerous examples of the Debtor's contemptuous behavior. In that document, the state court specifically found beyond a reasonable doubt that the Debtor intentionally, knowingly, and willfully failed to comply with the Amended Order and that through his acts or omissions, he was in contempt of the state court. The continuation of the contempt proceeding against the Debtor was merely an attempt by the state court to enforce its prior order and to protect the dignity of the state court. Therefore, the Court determines that § 362(a)(1) did not prohibit the continued adjudication of the contempt proceeding after the Debtor filed his chapter 13 petition.

The Debtor has argued that the Defendant should have withdrawn her request for fees made at the March 22, 2007 hearing on the January 25th Order to Show Cause, and that the failure to do so constitutes a willful violation of the automatic stay. The following request appears to be at the crux of the Debtor's argument:

> MS. SMOAK: Okay. We're asking for some kind of fine to be ordered for Mr. Bryner to pay to my client for her attorney's fees. She's paid upwards of $150,000.00 from the beginning, but upwards of $50,000 from the time that we just settled this case. And as you can see, with 28 lawsuits . . .[27]

---

[27] Debtor's Ver. Memo. in Supp., Exh. C at 45, lines 21-25.

The Debtor's argument fails for two reasons. First, the fact that the Defendant requested fees as a sanction at the March 22, 2007 does not change the nature of the contempt proceeding. The contempt proceeding was still the state court's way of attempting to enforce its prior order and to uphold its dignity. It was the state court that instructed the Guardian Ad Litem to prepare the January 25th Order to Show Cause so that the state court could examine whether the Debtor's conduct throughout the State Court Action constituted contempt. The Defendant's request for fees as a sanction for contemptible behavior was made before the Debtor filed his chapter 13 bankruptcy petition and such a request did not transform the contempt proceeding into a veiled attempt by the Defendant to collect a debt.[28]

The second reason the Debtor's argument fails is because the Defendant did not have an affirmative duty to withdraw her request for monetary sanctions. The request for fees at the March 22, 2007 hearing was not an attempt by the Defendant to collect a debt. It was a suggestion to the state court that it award fees to the Defendant's client as a punishment for his behavior. These facts are not akin to the postpetition garnishment of wages based on a prepetition judgment where a duty to withdraw the garnishment might arise postpetition. Here, there is no duty to withdraw the request for fees because the request for fees was made not in a veiled attempt to collect a debt, but instead, the fee request was a sanction proposed to the state court in

---

[28] *See America Online, Inc. v. CN Productions, Inc.,* 272 B.R. 879, 882 (E.D. Va. 2002) (determining that the automatic stay acts as a bar to any effort a party makes to obtain damages, but not to any effort to determine if a party should be held in contempt and sanctioned); *Price*, 1989 WL 7922, at *1 (finding that "[a]lthough plaintiff requested a fine in the approximate amount of its default judgment, because the order to show cause was issued before defendant filed bankruptcy, the court has determined that plaintiff did not request such an order to accomplish in this contempt proceeding what it could not accomplish in bankruptcy as a creditor" and holding that the automatic stay did not apply to the contempt proceeding).

conjunction with the January 25th Order to Show Cause.[29] There is simply no affirmative duty to withdraw such a suggestion. Ultimately, the state court did not even adopt this suggestion and did not impose a monetary sanction against the Debtor. For these reasons, the Court determines that any act or omission by the Defendant in conjunction with the contempt proceeding was simply not a violation of the stay.

## IV. CONCLUSION

The entry of the state court's Findings of Fact and Conclusions of Law and Judgment resulted in the incarceration of the Debtor after he filed for chapter 13 relief. The Defendant was present at the September 25, 2007 hearing, and she did not withdraw her request for fees as a monetary sanction against the Debtor. These facts, however, do not automatically give rise to a claim for relief under § 362(k). Courts have the inherent power to protect their dignity and require compliance with their orders. Failure to comply with court orders can and does lead to findings of contempt. That is what happened here. The state court had ordered the Debtor to conduct himself in a civil manner. The Debtor chose not to comply with this order and, as a result, he was held in contempt. The continuation of the contempt proceeding, the Defendant's failure to withdraw the request for fees, and the Defendant's limited postpetition participation in that proceeding do not constitute willful violations of the automatic stay because the stay did not apply to those proceedings. For the reasons articulated above, the Court will grant the Defendant's Motion and will deny the Debtor's Motion. A separate order will be issued.

---------------------------------------------END OF DOCUMENT---------------------------------------------

---

[29] The Debtor has attempted to collaterally attack the validity of the state court's January 25th Order to Show Cause indicating that "[u]nder Utah law it is necessary for a Judge to file a statement of Judicial fact in order to bring an order to show cause." Debtor's Ver. Memo in Supp. at 3. The Court, however, adopts the reasoning articulated in the Def's Memo. in Opp. at 5 and disregards this argument.

I:\LAW\OPINIONS\Opin0553.wpd                    11

_____ooo0ooo_____

## SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY DISPOSITION** will be effected through the Bankruptcy Noticing Center to each party listed below:

Roger Bryner
1042 Ft. Union Boulevard, #330
Salt Lake City, UT 84047
    *Pro Se Plaintiff*


Michael F. Thomson
Durham Jones & Pinegar
111 East Boadway, Suite 900
P.O. Box 4050
Salt Lake City, UT 84110-4050
    *Counsel for Defendant*